# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Marshall**, 2013 IL App (5th) 110430

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS MARSHALL, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-11-0430 |
| Filed | September 13, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for first-degree murder was reversed and the cause was remanded for a new trial where the State admitted that the prosecution's egregious use of racial prejudice throughout the trial in the evidence and arguments amounted to plain error that denied defendant a fair trial. |
| Decision Under Review | Appeal from the Circuit Court of Williamson County, No. 10-CF-342; the Hon. John Speroni, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Steven A. Greenberg and Sean O'Malley, both of Steven A. Greenberg & Associates, Ltd., of Chicago, for appellant. |
|---|---|
| | Charles Garnati, State's Attorney, of Marion (Patrick Delfino, Stephen E. Norris, and Patrick D. Daly, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion. Justices Chapman and Wexstten concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, Marcus Marshall, argues on appeal that he was denied a fair trial by the State's racially based evidence and arguments. The State has filed a confession of error. We find the defendant's contentions and the State's confession to be well-taken. For the reasons that follow, we reverse and remand the cause for a new trial.

¶ 2                                            BACKGROUND

¶ 3     On August 23, 2010, and August 25, 2010, Marshall was charged by information with two counts of first-degree murder of the victim, LaQuinn Hudson, in contravention of sections 9-1(a)(1) and (a)(2) of the Criminal Code of 1961 (720 ILCS 5/9-1(a)(1), (a)(2) (West 2010)).

¶ 4     The jury trial commenced on July 5, 2011. The following relevant information was adduced at trial. In the early morning hours of August 22, 2010, LaQuinn Hudson was shot to death at a house party in Marion, Illinois. At trial, the State produced, among many others, two witnesses, Jodie Lacy and Crystal Blye, who testified to facts that implicated Marshall in the murder of the victim.

¶ 5     Lacy testified that after leaving a bar slightly before midnight on August 21, 2010, she traveled to a home where a party was being held. At some point during the party, she heard four or five shots being fired. She ran to her car. She testified that though she did not immediately recognize the man who had been shot, she did see Marshall running away from the place where the shots had been fired. Lacy shared this information with an investigator. However, Lacy later wrote a letter to Marshall's attorney recanting the information she originally shared with the investigator. Nevertheless, Lacy testified for the State at the trial, repeating the original information she had given police.

¶ 6     Blye testified that she was also at the same bar as Lacy before it closed. She observed Marshall and the victim at the bar, but did not see any altercation take place there. Blye then left the bar and went to the house party. Blye testified that she overheard an argument

between Marshall and the victim. She heard Marshall repeatedly ask the victim to reveal whatever weapons he had. The victim replied that he did not have any weapons. Blye testified that she did not see a gun in Marshall's hand prior to the shooting, but did see a bright light that was accompanied by the sound of three gunshots. At that point, she was able to see a gun in Marshall's hand. Blye gave a report to the investigator later in the day. However, Blye also gave a letter to Marshall's attorney recanting the information she gave to the police. Like Lacy, Blye also testified for the State at trial, repeating the original information she had given to police.

¶ 7     The issues in this appeal concern the prosecutor's opening statement and closing argument regarding the witnesses, Lacy and Blye. In his opening statement, the prosecutor, apparently in an effort to explain why both Lacy and Blye gave statements to police, then recanted those statements, then agreed to testify for the State at trial, stated the following:

> "And you will see, ladies and gentlemen, that there are some, not all–there are many good people in the black community, but basically you will see that there are a few in the black community who refuse to cooperate with the police even when a murder happens right under their nose, and those people have a habit of intimidating, harassing, sometimes threatening anybody who they think is cooperating with the police. That's what makes this case so difficult, ladies and gentlemen."

¶ 8     In his closing argument, the prosecutor stated the following:

> "But I think what is most crucial in deciding this case, in deciding the credibility of Jodie Lacy and Crystal Blye, and in deciding most of the other issues in this case, is to understand the culture of the black community here in Marion.
>
> Please, you have to keep in the back of your mind how many people in that community feel about law enforcement. You have to understand and keep in mind how they react to the police and to the prosecutors. Sometimes for people like us, that's hard to understand. People were brought up to believe that the police were their friends; that when something happens, when we are in trouble, that the police are our friends. And that's where we go to get help from is the police when bad things happen.
>
> But in the black community here in Marion, it's just the opposite. Most–for whatever reasons, most of these people were raised to believe that the police and prosecutors are the enemy; that for some reason, we are always out to get them. In their mindset, the biggest sin that you could–that you can commit is to be a snitch in the community. The biggest sin that you could commit is to ever cooperate with the police on anything. It's a sin to even cooperate when one of your own people gets brutally gunned down and is left to bleed to death.
>
> And I am not saying that the whole black community is like that, ladies and gentlemen. There are some very good law[-]abiding citizens in that community here in Marion. But the evidence has shown that again, for whatever reasons, there is an intense dislike and even hatred for the police. And this group of people who feel that way make it extremely hard on the people who are law-abiding and want to do what is right and who are willing to come forward and give information that they have when a crime has been committed."

¶ 9     The other notable statement the prosecutor made during closing argument was as follows:

"Now, in our white world, ladies and gentlemen, our automatic reaction in that type of situation, if somebody gives a statement to the police and then later on changes their story, the automatic response would be that that person is not truthful and that there is a problem with their credibility.

But again, please look at their testimony and what they did and what they didn't do through the eyes of the people who are raised, again, to feel that the police are always against them and that they cannot trust the police."

¶ 10    Defense counsel did not object to the prosecutor's opening statement or closing argument either at the time of trial or in a posttrial motion. On July 14, 2011, the jury returned a guilty verdict on both counts of first-degree murder. On September 30, 2011, the circuit court vacated the conviction on count II and sentenced Marshall to 85 years' imprisonment in the Illinois Department of Corrections. Marshall appeals, arguing that he was denied a fair trial by the prosecutor's opening statement and closing argument.

¶ 11                                    ANALYSIS

¶ 12    Generally, a defendant must object both at the time of trial and in a posttrial motion to preserve potential errors for review. *People v. Kiefel*, 2013 IL App (3d) 110402, ¶ 16. However, under the plain error doctrine, a reviewing court may consider an unpreserved error if either (1) the evidence is so closely balanced that the jury's verdict may have resulted from the error rather than the evidence or (2) the error was so fundamental and of such a magnitude that it affected the fairness of the trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). In this case, defense counsel did not object to the prosecutor's arguments either at the time of trial or in a posttrial motion, rendering the errors unpreserved.

¶ 13    In undertaking a plain error analysis, we must first determine whether any error occurred. *People v. Williams*, 193 Ill. 2d 1, 27 (2000). Our courts have consistently condemned the introduction of race into a prosecutor's arguments. See *People v. Eddmonds*, 101 Ill. 2d 44, 66 (1984) ("appeals to racial prejudice [in prosecutorial arguments] are to be condemned"); *People v. Brown*, 170 Ill. App. 3d 273, 283 (1988); *People v. Richardson*, 49 Ill. App. 3d 170 (1977). It is obvious, here, that the prosecutor's remarks constituted error.

¶ 14    We need not address Marshall's argument with regard to the first prong of the plain error rule, because we find that, under the second prong of the test, the errors committed constituted a fundamental violation that affected the fairness of the trial under the second prong of the test. In *People v. Richardson*, the prosecutor's closing argument was similar to that of the prosecutor in this case. *People v. Richardson*, 49 Ill. App. 3d 170 (1977). The prosecutor in *Richardson* said: " 'First of all, concerning the defendant's witness, you have to remember that they don't live in the same social structure that we do, that you and I do. *** The society they live in do not consider the truth a great virtue. The society they live in, they lie every day. It is nothing to them to protect one of their own kind by lying.' " *Id.* at 172-73. And later in the argument, the prosecutor stated: " 'Does it make any sense to you that people like this tell the truth? Not especially, if one of their own is being prosecuted by

-4-

white society.' " *Id.* at 173. Finding that the language the prosecutor used was an unmitigated appeal to prejudice and deprived the defendant of a fair trial, the case was reversed on appeal and remanded for a new trial. The facts here are similar, although the improper statements in this case were not limited to the closing argument. The prosecutor's remarks were not an isolated event in this case. It was a consistent theme in the presentation of the State's theory of the case. The introduction of race was arbitrary–the elements of the charge of first-degree murder do not require any showing of the racial makeup of the community in which the crime took place. See 720 ILCS 5/9-1(a)(1), (a)(2) (West 2010). Nor does race bear on the credibility of the State's witnesses. The prosecutor urged the jurors to keep in the back of the their minds how the "black community" felt about law enforcement, that "understand[ing] the culture of the black community here in Marion" would decide "most of the other issues in this case" along with the witnesses' credibility. We cannot say that the jury did not consider these improper and inflammatory remarks when reaching its verdict. This error was substantial, and we have found plain error for less-flagrant remarks from a prosecutor.

¶ 15    Next, a prosecutor has wide latitude in closing argument and may argue fair and reasonable inferences drawn from the evidence presented at trial. *People v. Porter*, 372 Ill. App. 3d 973, 978 (2007). However, a prosecutor may not argue facts not based in evidence in the record. *People v. Johnson*, 208 Ill. 2d 53, 115 (2003). Here, the prosecutor did not introduce any evidence about the makeup of the community in which the crime took place, yet he did argue supposed "facts" about the community during the presentation of the case, such as the "culture of the black community" and "how many people in that community feel about law enforcement." These "facts" had no basis in the evidence and lacked any sort of foundation. His "facts" were naked prejudice.

¶ 16    Finally, the prosecutor improperly aligned himself with the jury when he contrasted the "black community" with "our white world." Ignoring, for a moment, the extremely racially prejudicial comparison that the prosecutor introduced when he said that statement, the prosecutor cannot create an "us versus them" argument during closing argument and effectively make himself a thirteenth member of the jury. *People v. Vasquez*, 8 Ill. App. 3d 679, 681 (1972); see also *People v. Johnson*, 208 Ill. 2d 53, 80 (2003), and *People v. Johnson*, 149 Ill. App. 3d 465, 468 (1986).

¶ 17    The State's use of race was an egregious and consistent theme throughout the trial. Even if the prosecutor had made only one reference to race, such reference would fall within a category that our courts have previously found to be plain error. That there were multiple instances of such racial prejudice is all the more reason to warrant a new trial for Marshall. These errors were so substantial that Marshall was denied the right to a fair trial.

¶ 18                              CONCLUSION

¶ 19    For the foregoing reasons, the judgment of the circuit court of Williamson County is reversed and the cause is remanded for a new trial. We direct our clerk to issue the mandate *instanter*.

¶ 20    Reversed and remanded.