2024 IL App (1st) 221282
No. 1-22-1282
Opinion filed August 23, 2024

Sixth Division

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 06048 01 |
| | ) | |
| MUSAAB AFANDI, | ) | Honorable |
| | ) | Anjana Hansen, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Oden Johnson and Justice C.A. Walker concurred with the judgment and opinion.

**OPINION**

¶ 1 Whether intended or inadvertent, prejudicial and inflammatory remarks by lawyers can consciously or unconsciously affect jurors. Musaab Afandi argues that, in its closing, the State improperly claimed: "[Afandi] came to this country [from Iraq] to rape women. He came to this country for you and for the judge and then he took that oath and he desecrated it."

¶ 2 The State argues that the silence of Afandi's counsel in its wake suggests it was harmless. We disagree.

¶ 3    Plain-error review calls on the appellate court to correct grave wrongs that strike at the heart of fairness, including prejudicial and inflammatory language, regardless of whether an objection was raised. The law must rise above prejudice, lest it fail in its most sacred charge. Because the prosecutor's remark compromised the integrity of the trial, the prescribed course is to reverse and remand.

¶ 4                                 BACKGROUND

¶ 5    Afandi faced charges of sexually assaulting and kidnapping J.C. by posing as an Uber driver outside a bar. Throughout the proceedings, Afandi required help from an Arabic interpreter. The judge admonished witnesses to speak slowly to accommodate the interpreter.

¶ 6                                  Jury Trial

¶ 7    J.C. testified that Afandi, posing as her Uber driver, picked her up outside a bar around 2 a.m. and took her to a secluded place where he sexually assaulted her. She had between two and four drinks that evening, though she could not recall the exact number. At the time, J.C. weighed about 120 pounds. During the assault, she feigned sleep and "clenched" her teeth to avoid oral penetration while he straddled her in the passenger seat. She testified that Afandi spoke with an accent.

¶ 8    Later, police found a video on Afandi's phone of J.C. apparently sleeping in his front passenger seat. Her pants were partially down, and Afandi had exposed her breast.

¶ 9    The State called K.F. and N.F. to show Afandi had a propensity for sexual assault and an accent. Both described similar events. N.F. noted his "thick accent and broken English." DNA testing revealed that Afandi could not be excluded as a contributor in J.C.'s and K.F.'s cases and was a match in N.F.'s case.

¶ 10    Afandi testified that he was born in Baghdad, Iraq, and came to the United States for safety after working with the U.S. armed forces in Iraq. He recounted meeting J.C. at a bar three months before the incident. That night, he saw her at the same bar, and she consented to ride with him and to his kissing and touching. He admitted filming her while she was dancing and asleep in his car. He said he weighed between 185 and 190 pounds at the time.

¶ 11    In rebuttal, the State presented forensic testimony that Afandi's phone contained only one video (of J.C. asleep). Cellular data did not show communications between J.C. and Afandi. The sergeant who recovered Afandi's cell phone testified that Afandi appeared to weigh 250 pounds.

¶ 12    During closing arguments, the State asserted that it had proven its case and called into question Afandi's credibility. Defense counsel spoke about Afandi having survived a roadside explosive attack in Iraq and taken refuge in the United States, which entitled him to the same rights as everyone else.

¶ 13    In rebuttal, Assistant State's Attorney Heather Kent stated, "Musaab Afandi is a serial rapist. It is who he is. It is what he does. He rapes women. He preys on women. He targets women. And then he becomes their worst nightmare." And, "He came to this country to rape women. He came to this country for you and for the judge and then he took that oath and he desecrated it."

¶ 14    The jury convicted Afandi on four counts of aggravated criminal sexual assault and one count of aggravated kidnapping. The trial court sentenced Afandi to 45 years in prison.

¶ 15    Afandi timely appealed. This court held oral argument.

¶ 16                                    ANALYSIS

¶ 17    Afandi asserts that (i) he was denied a fair trial due to the State's prejudicial and inflammatory remarks during rebuttal argument, which also included the prosecutor (ii) arguing

facts not in evidence, and (iii) misstating the law by defining reasonable doubt. We agree with Afandi's first claim and only address it.

¶ 18                                  Prosecutor's Closing Arguments

¶ 19    Acknowledging that his counsel failed to object, Afandi argues for review based on the plain-error doctrine because the errors violated his right to a fair trial and undermined the integrity of the judicial process. The State responds that the prosecutor's remarks required a contemporaneous objection and, in any event, did not amount to error. We agree with Afandi.

¶ 20    To preserve an issue, a party must object at trial and include the objection in a posttrial motion. *People v. Lewis*, 234 Ill. 2d 32, 40 (2009). But we may address unpreserved errors under the plain-error doctrine—that is, errors with no trial-court ruling to review—when (i) the evidence is closely balanced, thus precluding arguments that a person was wrongfully convicted, or (ii) the alleged error affected the fairness of the trial and challenged the integrity of the judicial process. *People v. Naylor*, 229 Ill. 2d 584, 602-03 (2008); see generally *People v. Herron*, 215 Ill. 2d 167, 180 n.1 (2005) ("The plain-error test *** is more aptly described as a standard to help a reviewing court determine when to excuse forfeiture.").

¶ 21    We begin by determining whether an error occurred. *People v. Sargent*, 239 Ill. 2d 166, 189-90 (2010). If we find error, we then assess whether either prong of the plain-error doctrine has been satisfied. We review the parties' closing arguments in their entirety and consider the context. *People v. Cisewski*, 118 Ill. 2d 163, 176-77 (1987). The burden rests with the defendant. *People v. McLaurin*, 235 Ill. 2d 478, 495 (2009).

¶ 22                                  Question of Error

¶ 23    A prosecutor has broad latitude during closing arguments to comment on the evidence and make reasonable inferences, including inferences unfavorable to the defendant. *People v. Hudson*,

- 4 -

157 Ill. 2d 401, 441 (1993). This latitude extends to commenting on the defense's characterizations of the evidence. *People v. Evans*, 209 Ill. 2d 194, 225 (2004).

¶ 24     We find the State's remark in closing argument constituted error. The State told the jury, "He came to this country *to* rape women. He came to this country for you and for the judge and then he took that oath and he desecrated it." (Emphasis added.) Yet Afandi testified that he came to the United States for safety after working with the U.S. armed forces in Iraq. And the State called no witness and introduced no evidence to contradict his testimony.

¶ 25     Without any factual basis, the remark constitutes error. *People v. Terry*, 312 Ill. App. 3d 984, 993 (2000) (error for "prosecutor at final argument to argue assumptions or facts not based on *** evidence"); see generally *People v. Henderson*, 142 Ill. 2d 258, 324-25 (1990) (noting courts expect prosecutors to honor "fundamental principle of trial practice": basing argument "on the evidence and reasonable inferences drawn from the evidence").

¶ 26                                Prong Two

¶ 27     The broad latitude the State enjoys in closing argument has limits. The State may not "appeal to prejudice" to fill gaps in its proof or strike a foul blow at the end of its case. *People v. Richardson*, 49 Ill. App. 3d 170, 173-74 (1977) (finding prong-two error where State argued witnesses "would perjure themselves to help a member of the same race"). Nor may the State pull the cover of "facts" over "naked prejudice." *People v. Marshall*, 2013 IL App (5th) 110430, ¶ 15 (finding prong-two error where State introduced no evidence about makeup of community yet argued supposed "facts" such as "[the] culture of the black community"). Arguments like these undermine the integrity of the proceedings, leading the appellate court to reverse and remand for new trials under the second prong of the plain-error doctrine. *People v. Romero*, 36 Ill. 2d 315, 320 (1967).

¶ 28    Here, the State defends its assertion by claiming "the *defendant* alone" (emphasis in original) introduced race and ethnicity into the case and its comments were a rhetorical response to defense counsel's closing references to Afandi's background. But the record discloses that Afandi's presence at trial did not introduce race or ethnicity or, for that matter, xenophobia or Islamophobia. The State's case-in-chief laid bare that Afandi was not fluent in English. The trial court highlighted his interpreter before witnesses testified. At one point, the trial court noted that the interpreter's assigned language was Arabic. Twice, the State elicited statements from witnesses pointing out Afandi's accent and broken English. And, in the 911 call played for the jury, J.C. said that her assailant was either Hispanic or Middle Eastern.

¶ 29    Likewise, we reject the State describing its closing argument as a debater's trick and its comments as a "retort." On the contrary, we find the language beyond an attack on credibility but rather functions as an offensive and unwarranted appeal for the jury to fear Arab and Muslim men, to demonize Afandi as an immigrant from a Muslim country.

¶ 30    The State shrugs off the seriousness of Afandi's argument by asserting, "Defendant's singular reliance on cases that involve overt and patently offensive race-based evidence and arguments do[es] not advance his claim in the slightest." But those cases do advance his claim. The courtroom is no place for irrelevant and repugnant remarks that have no purpose or justification except to unduly prejudice the jury. A single prejudicial remark like the State's corrodes the judicial process and has the potential to diminish the public's confidence in the legal system. Lawyers and judges must guard against the insidious creep of prejudice and bias so that justice is dispensed on the facts, the evidence, and the law.

¶ 31    Alternatively, the State contends we should consider other interpretations, citing *People v. Phillips*, 127 Ill. 2d 499, 529 (1989). " '[A] court should not lightly infer that a prosecutor intends

an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.' " *Phillips*, 127 Ill. 2d at 528-29 (1989) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47 (1974)). The State analogizes to an unpublished case in which a prosecutor referred to a 16-year-old Black defendant as a "boy." This court found that "boy" could reasonably be referring to a fact at issue— the defendant's age—rather than a demeaning label. *People v. Whitehead*, 2022 IL App (1st) 201345-U, ¶¶ 41-43. The State's contentions thus force us to ask: What is the plethora of less damaging interpretations of "he came to this country *to* rape women?" (Emphasis added.) This assertion does not have reasonable or legitimate alternative interpretations.

¶ 32    The State spends pages in its brief concerned that Afandi has accused the prosecutor of intentionally making a prejudicial remark. We do not decide whether the remark was deliberate or unintentional because reversal is appropriate when the State "inadvertently prejudice[s] the jury." *People v. Sanders*, 2020 IL App (3d) 180215, ¶ 15.

¶ 33    The State also suggests that the remark was snarky or sarcasm and "manufactured" for the purposes of this appeal. See generally *People v. Jones*, 2016 IL App (1st) 141008, ¶ 38 (admonishing sentencing judge that sarcasm and bias reflect neither dignity nor courtesy). A fair reading of the remark, however, reveals quite the opposite: By arguing to convict, the prosecutor could not have intended the opposite of what she said. Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/sarcasm (last visited August 13, 2024) [https://perma.cc/H4Z7-DL8G] (noting sarcasm "refers to the use of words that mean the opposite of what you really want to say"). Snarky is similar. See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/snark (last visited August 13, 2024) [https://perma.cc/RY4R-9V68] (defining "snark" as "an attitude or expression of mocking

irreverence and sarcasm"). Nonetheless, whether the jury perceived the remark as sarcasm or snarky cannot be known.

¶ 34     Nothing in the record supports even an inference that would justify the utterance. We reject as baseless the State's assertion on appeal that Afandi somehow "manufactured" this issue. On the contrary, the plain meaning of the remark infects the integrity and fairness of the jury trial.

¶ 35     We remind the State that it represents "all the people, including the defendant in a criminal action, and is bound to safeguard the constitutional rights of the defendant as well as those of any other citizen." *People v. Jackson*, 2021 IL 124818, ¶ 52 (Neville, J., specially concurring); see *Henderson*, 142 Ill. 2d at 325 (noting prosecutors are "sworn to uphold justice for all of society, including a defendant").

¶ 36     Finally, we reject the State's depiction of Afandi's discussion of his background in closing as an appeal for jury nullification. Afandi's background was relevant to his credibility, and the State did not object. Generally, background has " 'value in determining the credit to be given *** testimony and may be inquired into as a matter of right.' " *People v. Degorski*, 2013 IL App (1st) 100580, ¶ 63 (quoting Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 607.6 (10th ed. 2011)). Indeed, the State introduced background information from its witnesses, J.C., N.F., and K.F.

¶ 37                                CONCLUSION

¶ 38     Having reversed on the first issue, we need not address Afandi's remaining contentions.

¶ 39     Reversed and remanded.

*People v. Afandi*, 2024 IL App (1st) 221282

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-06048(01); the Hon. Anjana Hansen, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Pamela Rubeo, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Joseph Alexander, and Douglas P. Harvath, Assistant State's Attorneys, of counsel), for the People. |