**2026 IL 130585**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 130585)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
ANZANO P. CHAMBLISS, Appellee.

*Opinion filed January 23, 2026.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Overstreet, Holder White, Cunningham, and Rochford concurred in the judgment and opinion.

Justice O'Brien dissented, with opinion, joined by Chief Justice Neville.

**OPINION**

¶ 1		The central issue in this case is whether the trial court's failure to conduct a "prompt preliminary hearing to establish probable cause" as required by article VI, section 7, of the 1970 Illinois Constitution was reviewable as second-prong plain error, after defendant Anzano P. Chambliss failed to object and demand such a

hearing at any time before his trial at which he was convicted of aggravated battery beyond a reasonable doubt. The appellate court held that the error was second-prong plain error and reversed the defendant's convictions. 2024 IL App (5th) 220492. For the reasons that follow, we reverse the judgment of the appellate court.

¶ 2                                          BACKGROUND

¶ 3         On October 5, 2021, Trevor Pullum and Chris Cates, employees at Pinckneyville Correctional Facility, were driving home from work when they saw the defendant beat Emily Barnes and Carolyn Spell outside a convenience store in DuQuoin. Pullum and Cates stopped their vehicles, then stopped the attack. Shortly thereafter, DuQuoin Police Department Chief Steve Ingram and Officer Reid Bastien arrived at the scene and spoke with Barnes and Spell. The defendant was arrested.

¶ 4         Three days later, on October 8, 2021, the defendant was charged by information with three counts of aggravated battery, a Class 3 felony. 720 ILCS 5/12-3.05(a)(1), (c) (West 2020). On October 14, the Perry County circuit court spoke on the record with defense counsel via telephone. The court noted that the prosecutor was not present but that "we have an agreement with regard to how to proceed." The court asked defense counsel if he represented the defendant in an unrelated misdemeanor case where a fitness evaluation had been ordered. Defense counsel answered affirmatively, adding that he had experience with the defendant. According to defense counsel, there had been "questions" about the defendant's fitness in the past. Defense counsel believed that it would be appropriate to seek a fitness evaluation in this case, as well.

¶ 5         The trial court asked defense counsel if he would agree to postpone the defendant's arraignment and preliminary hearing because the fitness evaluation would "push off" the necessity of such a hearing. Defense counsel agreed that "it would be appropriate to delay the arraignment at this time since an in-person or even a video appearance wouldn't be possible or practical." Defense counsel acceded that the fitness evaluation would cause a delay in "setting the prelim." Defense counsel assured the trial court that he and the prosecutor were "on the same page." According to defense counsel, "nothing that was said today isn't anything that he and I didn't already discuss yesterday as far as me seeking a fitness

evaluation that very well could cause a delay into the arraignment and then in turn the preliminary hearing."

¶ 6        The trial court entered a written order appointing Dr. James Peterson to evaluate the defendant and to submit a report about his fitness for trial. The court scheduled a fitness hearing for October 28, 2021. That month, the defendant sent several letters to the trial court, one of which objected to the fitness evaluation and mentioned his right to remain silent. Dr. Peterson also sent a letter to the court, explaining that the defendant refused to speak to him, so he could not submit a report about the defendant's fitness.

¶ 7        On October 28, 2021, the parties appeared in court. Defense counsel waived "formal reading of the charges," and the trial court entered a not guilty plea for the defendant. The trial court acknowledged Dr. Peterson's letter, which stated that the defendant chose not to participate in the fitness evaluation. The trial court also acknowledged the defendant's letters and concluded that they raised fitness "in the Court's mind." Defense counsel informed the court that he had met with the defendant, who expressed "an unwillingness to meet with Dr. Peterson alone outside the presence of counsel." The defendant insisted that he would only speak to Dr. Peterson in open court. The trial court stated that Dr. Peterson would not conduct the fitness evaluation in the courtroom and informed the defendant that a fitness evaluation would be ordered.

¶ 8        The defendant disrupted the hearing, and he was removed from the courtroom. The trial court discussed scheduling another status hearing on the fitness evaluation with the prosecutor and defense counsel. A written order from October 28 ordered another fitness evaluation by Dr. Peterson and set "the fitness hearing date" for December 9, 2021.

¶ 9        On November 9, 2021, the defendant sent another letter to the trial court, stating that he had not been arraigned, contesting the merits of the State's case, and accusing the trial court of stalling. The defendant insisted that he had never requested representation and that his mental illness did not justify the delay in his case.

¶ 10        On December 9, 2021, the parties appeared in court. Defense counsel told the trial court that he visited the defendant in jail when Dr. Peterson attempted another

fitness evaluation. The defendant refused to speak to Dr. Peterson, even in the presence of counsel. Defense counsel also told the court that the defendant had asked him to withdraw from the case. The trial court noted that the defendant was charged with three felonies, so "until we resolve the fitness issue, the court is not inclined to address any issues with regard to an attorney." The defendant informed the court that he was "disabled" without further elaboration. At the close of the hearing, the judge announced that she had been reassigned and that a new judge would preside over this case beginning with the next court date.

¶ 11       On January 13, 2022, the defendant and defense counsel appeared in court, and the prosecutor appeared via telephone, before the new judge. Defense counsel told the trial court that the defendant still refused to participate in the fitness evaluation. The court stated that the defendant would have one more opportunity for a fitness evaluation with a new expert. The court advised the defendant that, if the expert's report indicated that he was fit for trial, that would be the fastest way to "get on" with the case.

¶ 12       The defendant stated that he had been in jail without bond since his October 2021 arrest and insisted that he was fit for trial. The defendant again refused to participate in a fitness evaluation. The trial court appointed Dr. Daniel Cuneo to conduct an evaluation. At the end of the hearing, defense counsel noted that the fitness statute was silent about the defendant's speedy trial rights and that the parties had not proceeded with a preliminary hearing because the fitness issue remained unresolved.

¶ 13       Throughout March and early April 2022, the defendant corresponded frequently with the trial court.

¶ 14       On April 6, 2022, Dr. Cuneo filed a report concluding that defendant was fit for trial. The following week, on April 14, the parties appeared in court. The defendant stipulated to the report, stating he had been fit all along. The trial court found defendant fit. The court next addressed defense counsel's pending motion to withdraw. The defendant insisted that he wanted defense counsel "out, months ago." The court admonished the defendant as required by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). The court listed the charged offenses and the possible penalties, informed the defendant that he had the right to appointed counsel, and explained the difficulties of self-representation. The defendant

confirmed that he understood his rights and the consequences of his decision to proceed *pro se*. The trial court found defendant knowingly and voluntarily waived his right to counsel and permitted defense counsel to withdraw.

¶ 15 The defendant then announced, "I was never arraigned. I never got no bond or nothing." The trial court arraigned him and set bond at $50,000, per the prosecutor's recommendation. The defendant asked for a jury trial "next month." After a heated exchange with the trial court, the defendant disrupted the hearing, and he was removed from the courtroom. The court set a pretrial hearing for May 13, 2022, and the jury trial for May 26 and 27. The court summarized:

"Okay, and I think we have everything covered. He was arraigned. There is a stipulation as to fitness. [Defense counsel] has been allowed to withdraw. We have set the pre-trial date and the jury trial date. For the record, the Court had [the defendant] removed because he was being disruptive to the proceedings. So we will give [the defendant] a copy of this order."

Neither the prosecutor nor the trial court mentioned a preliminary hearing.

¶ 16 At some point, the pretrial hearing was moved to May 17, 2022. On that date, the parties appeared in court. The prosecutor stated that he would abandon count I and file an amended information asserting that the offenses in counts II and III occurred on a public way or in a public place of accommodation. The defendant reiterated that he "never had no bond within 48 hours." The prosecutor produced an October 28, 2021, order from the previous judge that stated, "By telephone call with Perry County Jail, bond was set in this matter on October 7th, 2021 in the amount of $75,000."[1] The trial court and the defendant discussed aspects of his case, and the court advised the defendant that any fact questions would be resolved by the jury.

¶ 17 The jury trial began on May 26, 2022. The State's case-in-chief included five witnesses.

---

[1]The record contains a handwritten "motion to suppress," notarized on March 1, 2022, and file stamped on March 7, in which the defendant seems to acknowledge the earlier bond setting. He wrote, "This defendant has been held unable to place $7,500 cash 10% of $75,000."

¶ 18    Officer Bastien testified that he was working on the day of the attack, and he responded to a dispatch about an incident near a convenience store. Officer Bastien and Chief Ingram arrived there at the same time. Bastien saw two correctional officers and the defendant standing on the lawn of an adjacent funeral home. According to Bastien, the correctional officers stated that the defendant had "beaten up two women." Chief Ingram informed Officer Bastien that one of the women had "a swollen eye, a red eye." Bastien placed the defendant in the back of his patrol car and obtained statements from the two women, the two correctional officers, and an eyewitness who had called the police.

¶ 19    The defendant's cross-examination was short, and it yielded no exculpatory evidence.

¶ 20    Emily Barnes testified that she was a longtime DuQuoin resident and she lived with her mother. On the day of the attack, she was walking to the convenience store to retrieve money from an automated teller machine, when she saw Carolyn Spell. Barnes and Spell were acquainted because Barnes had worked with Spell's father for several years. Spell's father was hospitalized at the time, and Barnes asked Spell about his health. At that point, the defendant approached the two women. Barnes then described her interaction with the defendant:

> "He was irate. He was, how can I put it, he was not respectful. He came up there. He said he was going to go to jail. And I asked him why are you going to jail? You know, you come up talking to us, he was already, you could smell the liquor on him. So, you know, I was just trying to ease him on his way. *** Can you just go on, you know, can you just leave us alone and go on. He wouldn't. He kept on, he kept on. So I kept talking to my friend, you know, try to ignore him, try to block him out ***. So I was finishing talking to my friend. He got behind me. He started calling us names. I tried to tell him, sir, can you just leave us alone. *** Go on your way. He did not. The next thing I know he spit on me. I went to block. The next thing I got cold-cocked.
>
> * * *
>
> He hit me full fist on the right side and kept hitting me. The next thing you know I felt my body and him knocking me down. He still was on top of me punching me. So I was defending myself so I fought back. Being a woman, I

- 6 -

am terrified. This is a big man on top of me. I am terrified. I didn't know if he was going to kill me. I didn't know what was going to happen."

¶ 21    According to Barnes, Spell came to her assistance. Spell grabbed the defendant and yanked him off Barnes, "and that's when the people on the streets seen him and the two prison guards came to help get him off of me." The police arrived. Barnes spoke to Chief Ingram and gave him a written statement. Barnes testified that she did nothing to provoke the defendant. She was injured on the right side of her face, her finger, and her side. She received medical treatment at the local hospital. Barnes stated that her injuries were "very painful."

¶ 22    The defendant's cross-examination was short and argumentative, and it yielded no exculpatory evidence.

¶ 23    Carolyn Spell testified that she had lived and worked in DuQuoin for some time. On the day of the attack, she was riding her bicycle after work, heading to the convenience store, when the defendant asked to speak to her. When asked if she knew the defendant, Spell answered that she had "just seen him around." Spell described their conversation:

> "He asked me how I was doing and I said I am doing fine, that I was kind of depressed because my dad was in the hospital for Covid and I started talking to him about that and he just like I guess he just got mad. I don't understand why he got mad about it and everything. ***
>
> ***
>
> *** Miss Emily [Barnes] was standing right there *** and she was like why is he yelling at you for? And I was like I don't know. He just called me over there and asked me how I was doing and I was talking to him about the situation with my dad and he just started screaming and yelling at me."

¶ 24    Spell testified that she and Barnes talked about Spell's father's health, when the defendant approached them.

> "And he comes, he walks up there and me and her was talking and he was trying to say something and she was like go on about your business, we are trying to have a conversation. She asked him about three or four times and he started

calling us bitches and hoes \*\*\*. \*\*\* [B]efore I knew it he was in Miss Emily's face and before I knew it, he punched her."

¶ 25 Spell was surprised by the defendant's attack. She testified that he hit Barnes and that Barnes retaliated. According to Spell, "they ended up falling on the ground and he is on top of her and he was waylaying her." After Spell pulled the defendant away from Barnes, he stood and approached her. Spell stated, "He hit me. I fell. I scraped my knee, scraped up my elbow, messed up my toe because my toe went backwards." The defendant spit at Barnes. The police arrived, and Spell gave a written statement consistent with her testimony. She did not seek medical attention for her injuries.

¶ 26 The defendant's cross-examination was long, argumentative, and largely irrelevant, and it yielded no exculpatory evidence.

¶ 27 Trevor Pullum, one of the correctional officers, testified that he was driving home from work on the day of the attack, when he saw a Black man hit a Black woman with a closed fist and a White woman who tried to intervene with a closed fist. The Black man was the defendant. Pullum testified that he stopped, exited his vehicle, and "just tried to get between this fellow and the women." His coworker, Chris Cates, also stopped and exited his vehicle. Both Pullum and Cates were in their uniforms. Neither of them touched the defendant, and the police arrived instantly. They both gave written statements to the police.

¶ 28 The defendant's cross-examination was short, and it yielded no exculpatory evidence. The defendant stated, "I am saying the whole incident didn't happen. You are saying this for out of no reason it stopped because you showed up." Pullum nodded. When the defendant asked if Pullum knew why the attack happened, he said, "No. All I witnessed was you hitting two women."

¶ 29 Chief Ingram testified that he and Officer Bastien arrived at the scene of the incident at roughly the same time. Ingram spoke to Barnes, who had a swollen and bloodshot eye. She said that he had been battered by the defendant. Ingram then walked over to Bastien, who was with the defendant. The defendant said, "look at the video" and "get the video." According to Ingram, the defendant was highly intoxicated and fairly agitated.

¶ 30     Chief Ingram testified that he went to the convenience store to ask the clerk if the store had a surveillance camera that might have captured the incident. The clerk informed him that the store did have a camera, but it was not pointed in the direction of the incident. Ingram checked with the other surrounding businesses, but none of them had a video recording of the incident. The prosecutor then played the footage from Officer Bastien's body camera. According to Ingram, the footage began when Officer Bastien arrived at the scene and ended when the defendant was taken to the Perry County Jail.[2]

¶ 31     The defendant's cross-examination was short and argumentative, and it yielded no exculpatory evidence. Chief Ingram acknowledged that he did not see the beginning of the incident. Relying on nonexistent video recordings, the defendant insisted that, "if you watch the video you would see I am not the aggressor." Ingram agreed that the body camera footage showed the defendant saying "I never did nothing to them" and "they are attacking me."

¶ 32     The defendant's case in rebuttal included three witnesses.

¶ 33     Barnes testified that she did not say anything derogatory to the defendant on the day of the attack. The defendant stated that Barnes and her mother attacked him, but Barnes testified, "My mother was not there when he assaulted me. It was just me and Carolyn [Spell]."

¶ 34     Spell testified that she did not hear Barnes say anything derogatory to the defendant. The defendant stated that Spell "said that I attacked Emily [Barnes] for nothing." Spell stated, "I know this, you guys were arguing and she was asking you to get up out of her space and she asked you several times to leave us alone and you guys was screaming and yelling at each other and you punched her." The defendant again stated, "And you are saying just for nothing I did this." And Spell again stated, "I don't know why you did it. All I know is she asked you more than once to get up out of her face and asked you to leave and you guys started screaming and yelling and you punched her." Spell conceded that, before the attack, the defendant had never disrespected her.

---

[2]The body camera footage is not in the record before us.

¶ 35    The defendant testified by narrative. He stated that he was diagnosed with a mental illness. According to the defendant, the two women "tried to say I suck dick and all of that." In response, the defendant cursed back at Barnes, which led to her striking him. The defendant noted that incident stopped without any intervention from the correctional officers or the police. He stated, "Where would be the logic if I am the one being the aggressor, there is no need to stop unless somebody actually stopped me." He added that, after Spell grabbed him, the incident "instamatically stopped because no man or nobody said they physically stopped this. It just, it just stopped. So where is the logic in that?" On that point, the defendant rested.

¶ 36    The parties gave closing arguments. The prosecutor's presentation was succinct. He simply told the jury that the State had offered enough evidence to prove that the defendant caused bodily harm to Barnes and Spell and that he did so on a public way or in a public place of accommodation.

¶ 37    The defendant's presentation was succinct, as well. The defendant told the jury that "there is no logic in me to strike nobody for nothing." The defendant also told the jury that he was armed with a knife at the time of the attack. He continued, "If I am a nut, I would have pulled out a knife and started stabbing you if I am a nut and hurt somebody for nothing. *** So if I am a nut, hitting somebody, attacking somebody for nothing, most people they are going to stab you up. So, you know, I will just let you look at the truth."

¶ 38    The trial court instructed the jury, and its deliberations began at 3:30 p.m. Ten minutes later at 3:40 p.m., the jury reached a verdict, finding the defendant guilty on both counts of aggravated battery.

¶ 39    On July 14, 2022, the parties appeared in court for the sentencing hearing. The trial court denied the defendant's oral request for a new trial and sentenced him to concurrent four-year terms of imprisonment. The defendant appealed his convictions and sentences.

¶ 40    The appellate court reversed the defendant's conviction. 2024 IL App (5th) 220492. The appellate court framed the issue as one of first impression because the defendant was afforded neither a preliminary hearing nor a grand jury indictment, as mandated by the Illinois Constitution. *Id.* ¶ 10. The court noted that the defendant

did not raise the issue before trial and did not file a posttrial motion, so he had forfeited review of that issue. *Id.* ¶¶ 10-11. The court then discussed the plain error doctrine, "which allows a reviewing court to consider unpreserved claims of error in specific circumstances." *Id.* ¶ 11 (citing *People v. Thompson*, 238 Ill. 2d 598, 613 (2010)). After reciting the two prongs of the plain error doctrine, the appellate court focused on the second, observing that this court "has equated second prong plain error with structural error." *Id.* ¶ 12 (citing *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009)).

¶ 41        The appellate court then changed direction from second-prong plain error to "the rationale for, and the foundational requirement of, a probable cause determination in criminal cases by a preliminary hearing or a grand jury indictment." *Id.* ¶ 13. Quoting a student-written note about federal criminal procedure published in the Yale Law Journal more than 50 years ago, the appellate court stated that the primary function of a preliminary hearing is actually two-fold: to determine whether there is sufficient indication that a crime has been committed by the defendant to justify further detention and to screen out weak and unsubstantiated cases. *Id.* (citing Note, *The Function of the Preliminary Hearing in Federal Pretrial Procedure*, 83 Yale L.J. 771, 772 (1974)). Quoting a 1967 work by New York University law professor Delmar Karlen titled *Anglo-American Criminal Justice*, the court rephrased the function of a preliminary hearing as an independent check on the initial decision of the police or the prosecution to proceed. *Id.* (citing Delmar Karlen, Anglo-American Criminal Justice 145 (1967)).

¶ 42        Turning to Illinois law, the appellate court stated that our constitution unequivocally provides the right to a prompt preliminary hearing or a grand jury indictment to a defendant charged with a felony. *Id.* ¶ 16 (citing Ill. Const. 1970, art. I, § 7). Additionally, section 109-3(a) of the Code of Criminal Procedure of 1963 (Code) requires the trial court to " 'hold the defendant to answer to the court having jurisdiction of the offense if from the evidence it appears there is probable cause to believe an offense has been committed by the defendant *** if the offense is a felony.' " *Id.* (quoting 725 ILCS 5/109-3(a) (West 2020)). And section 109-3.1(b) of the Code provides that, if the defendant is not indicted, a hearing under section 109-3 must occur within 30 days of the defendant's arrest. *Id.* (citing 725 ILCS 5/109-3.1(b) (West 2020)). According to the appellate court, "the State's probable cause foundation is outlined for the defendant." *Id.* ¶ 17.

¶ 43    The appellate court found "additional guidance on these constitutional and legislative requirements" in Illinois caselaw (*id.* ¶18), including *People v. Howell*, 60 Ill. 2d 117, 120 (1975), which held that a 65-day delay in providing a preliminary hearing to the defendant constituted a serious deprivation of a constitutional right. The appellate court also discussed *People v. Kirkley*, 60 Ill. App. 3d 746, 750 (1978), which held that a 176-day delay in providing a preliminary hearing to the defendants constituted a "flagrant *** violation" of the constitutional right to a prompt preliminary hearing that necessitated reversal of their defendants' convictions. 2024 IL App (5th) 220492, ¶ 19. The appellate court found that the facts of this case were "more egregious than the facts in *Kirkley*." *Id.*

¶ 44    The appellate court pivoted back to the "next" question: whether the error in not indicting the defendant or conducting a preliminary hearing was "structural" in nature, necessitating reversal. *Id.* ¶ 23. An error is typically designated as structural only if it necessarily renders a criminal trial " 'fundamentally unfair or unreliable in determining guilt or innocence.' " *Id.* (quoting *People v. Averett*, 237 Ill. 2d 1, 12-13 (2010)). The appellate court held that "the failure to conduct either a preliminary hearing or return a bill of indictment must be included in that limited class of cases recognized as structural error." *Id.* ¶ 25.

¶ 45    Rather than remanding for further proceedings, the appellate court reversed the defendant's convictions outright. *Id.* ¶ 26. The appellate court concluded that granting a probable cause hearing to the defendant after his constitutional rights had already been violated would be " 'ludicrous.' " *Id.* (quoting *Kirkley*, 60 Ill. App. 3d at 750).

¶ 46    This court allowed the State's petition for leave to appeal. See Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 47                                    ANALYSIS

¶ 48    Initially, we must address some preliminary matters.

¶ 49    The State argues that the defendant waived his claim that the trial court erred by not conducting a preliminary hearing under section 109-3 (725 ILCS 5/109-3 (West 2020)) of the Code because the defendant never filed a motion to dismiss

under section 114-1(a)(11) of the Code (*id.* § 114-1(a)(11)). According to the State, the defendant's waiver of the statutory right to a preliminary hearing constituted a waiver of the constitutional right to a preliminary hearing. The State asserts that the constitutional right is only enforceable through the statute.

¶ 50    The appellate court never considered that argument for one simple reason. The State did not raise the issue of waiver before the appellate court. Where the appellate court reverses the judgment of the trial court and the appellee in the appellate court brings the case to this court as the appellant, that party may raise any issues properly presented by the record in support of the trial court's judgment, even if those issues were not raised before the appellate court. *People v. Gray*, 2024 IL 127815, ¶ 19 (citing *People v. Artis*, 232 Ill. 2d 156, 164 (2009)). That is precisely what happened in this case. The State's position, however, is incorrect.

¶ 51    Section 109-3 of the Code, "Preliminary examination," provides:

> "(a) The judge shall hold the defendant to answer to the court having jurisdiction of the offense if from the evidence it appears there is probable cause to believe an offense has been committed by the defendant, as provided in Section 109-3.1 of this Code, if the offense is a felony.
>
> * * *
>
> (e) During preliminary hearing or examination the defendant may move *** for dismissal of the charge pursuant to Section 114-1 of this Act or for other reasons." 725 ILCS 5/109-3(a), (e) (West 2020).

Section 109-3.1(b) of the Code provides, "Every person in custody in this State for the alleged commission of a felony shall receive either a preliminary examination as provided in Section 109-3 or an indictment by Grand Jury as provided in Section 111-2, within 30 days from the date he or she was taken into custody." *Id.* § 109-3.1(b).

¶ 52    Section 114-1 of the Code provides:

> "(a) Upon the written motion of the defendant made prior to trial before or after a plea has been entered the court may dismiss the indictment, information or complaint upon any of the following grounds:

(11) The requirements of Section 109-3.1 have not been complied with.

(b) The court shall require any motion to dismiss to be filed within a reasonable time after the defendant has been arraigned. Any motion not filed within such time or an extension thereof shall not be considered by the court and the grounds therefor \*\*\* are waived." *Id.* § 114-1(a)(11), (b).

¶ 53    Read together, the meaning of those statutes is clear. Under sections 109-3(a) and 109-3.1(b), a defendant charged by information with a felony has a statutory right to a preliminary hearing within 30 days of arrest. Under sections 109-3(e) and 114-1(a)(11), the defendant may file a motion to dismiss the information during the preliminary hearing, if the trial court did not conduct a preliminary hearing within those 30 days or for other reasons. Under section 114-1(b), if the defendant's motion is untimely, the trial court will not consider it, and the defendant waives any argument regarding the 30-day period.

¶ 54    Thus, the defendant may have waived an argument that the trial court violated section 109-3.1(a), but the defendant did not waive an argument that the trial court violated section 109-3. And the defendant certainly did not waive an argument that the trial court violated article I, section 7, of the Illinois Constitution.

¶ 55    The State further argues that the defendant invited or acquiesced to the trial court's failure to conduct a preliminary hearing. According to the State, defense counsel agreed to postpone the hearing until the issue of the defendant's fitness was resolved. Once the defendant was found fit, defense counsel withdrew, and the defendant proceeded *pro se*, immediately demanding a trial.

¶ 56    Again, the State's position is incorrect. Under article I, section 7, of our constitution, a person charged with a felony must be "given a prompt preliminary hearing to establish probable cause." Ill. Const. 1970, art. I, § 7; see 725 ILCS 5/109-3(a) (West 2020) ("[t]he judge shall hold the defendant to answer to the court \*\*\* if from the evidence it appears there is probable cause"); 725 ILCS 5/109-3.1(b) (West 2020) ("[e]very person in custody \*\*\* shall receive \*\*\* a preliminary examination"). The responsibility for providing such a hearing lies with the trial court, and the defendant did not ask the court to shirk that responsibility. The

defendant's disruptive behavior may have distracted the court, but that behavior did not obviate the constitutional requirement of a preliminary hearing. We turn to the merits.

¶ 57    The issue before us—whether the trial court's failure to provide a prompt preliminary hearing to the defendant constituted second-prong plain error—is a question of law, and our review of the appellate court's judgment is *de novo*. *People v. Moon*, 2022 IL 125959, ¶ 25.

¶ 58    Generally, a defendant forfeits review of any error in proceedings before the trial court, if the defendant does not object to the error and raise the error in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48. That forfeiture principle encourages the defendant to raise errors when they happen, allowing the court to correct them and disallowing the defendant from obtaining a reversal through inaction. *People v. Herron*, 215 Ill. 2d 167, 175 (2005); see *People v. Ford*, 19 Ill. 2d 466, 478-79 (1960) ("An accused may not sit idly by and allow irregular proceedings to occur without objection and afterwards seek to reverse his conviction by reason of those same irregularities.").

¶ 59    Here, while defense counsel and the trial court alluded to a preliminary hearing at a few hearings, neither defense counsel nor the defendant himself ever objected to proceedings without such a hearing. Further, the defendant never filed a posttrial motion, so he never raised the lack of preliminary hearing after his trial. The defendant's concern, once he chose to represent himself, was his arraignment and his bond. The defendant forfeited review of the preliminary hearing issue.

¶ 60    Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), however, provides an important exception to the forfeiture principle. Rule 615(a) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." *Id.* Stated differently, reviewing courts must disregard insubstantial errors, if they were not raised properly in the trial court, but may consider substantial errors, or what have become known as plain errors, even though they were not raised properly in the trial court.

¶ 61    A reviewing court exercises discretion in excusing a defendant's procedural default. *Sebby*, 2017 IL 119445, ¶ 48. We have identified two instances when it is appropriate to do so: (1) when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). In both instances, the burden of persuasion remains with the defendant. *Herron*, 215 Ill. 2d at 186-87.

¶ 62    The initial analytical step under either prong of the plain error doctrine is determining whether there was a clear or obvious error before the trial court. *Piatkowski*, 225 Ill. 2d at 565.

¶ 63    Article I, section 7, of the Illinois Constitution provides:

"No person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause." Ill. Const. 1970, art. I, § 7.[3]

There is no dispute that the defendant did not receive a prompt preliminary hearing, as required by article I, section 7. In fact, he received no preliminary hearing. A clear or obvious error occurred.

¶ 64    The defendant does not contend that the evidence against him was closely balanced, so we need not discuss whether the error satisfied the first prong of the plain error doctrine. The defendant does contend that the trial court's error in failing to provide a preliminary hearing was serious enough to deprive him of a fair trial. We turn to our jurisprudence regarding second-prong plain error.

¶ 65    Where the defendant claims second-prong plain error, a reviewing court must decide whether the defendant has shown that the error was so serious it affected the

_____

[3] Section 111-2(a) of the Code is the statutory counterpart to the constitutional provision. See 725 ILCS 5/111-2(a) (West 2020).

fairness of the trial and challenged the integrity of the judicial process. *Herron*, 215 Ill. 2d at 187. In *Moon*, 2022 IL 125959, ¶ 28, we observed that we have equated second-prong plain error with " 'structural error,' " which "necessarily renders a criminal trial fundamentally unfair or is an unreliable means of determining guilt or innocence." *Moon* is simply one in a strong and consistent line of cases that not only have linked second-prong plain error with structural error but also have defined both in terms of the fairness of the defendant's trial. See *People v. Johnson*, 2024 IL 130191, ¶ 55 ("An error is deemed structural only if it renders the criminal trial *** fundamentally unfair."); *People v. Jackson*, 2022 IL 127256, ¶ 28 (defining a structural error as a type of error that " 'erode[s] the integrity of the judicial process and undermine[s] the fairness of the defendant's trial' " (quoting *Herron*, 215 Ill. 2d at 186)); *People v. Clark*, 2016 IL 118845, ¶ 44 (stating that second-prong plain error analysis considers "whether that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process"); *Thompson*, 238 Ill. 2d at 614 (equating second-prong plain error with structural error, " '*i.e.*, a systemic error which serves to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial" ' " (quoting *Glasper*, 234 Ill. 2d at 197-98, quoting *Herron*, 215 Ill. 2d at 186)); *Glasper*, 234 Ill. 2d at 197-98 (same). "Fairness, in short, is the foundation of our plain-error jurisprudence." *Herron*, 215 Ill. 2d at 177. Indeed, the two prongs of the plain error doctrine offer "two different ways to ensure the same thing—namely, a fair trial." *Id.* at 179.

¶ 66    Because the plain error doctrine is a " ' "narrow and limited exception" ' " to the forfeiture rule (*People v. Hampton*, 149 Ill. 2d 71, 100 (1992) (quoting *People v. Szabo*, 113 Ill. 2d 83, 94 (1986), quoting *People v. Pastorino*, 91 Ill. 2d 178, 188 (1982))), second-prong plain errors are similarly and necessarily a very narrow and limited group (*Moon*, 2022 IL 125959, ¶ 28). As we stated in *Herron*, second-prong plain errors are "presumptively prejudicial errors—errors that may not have affected the outcome, but must still be remedied" because the error "deprive[d] the defendant of a fair trial." *Herron*, 215 Ill. 2d at 185; accord *Jackson*, 2022 IL 127256, ¶ 28. Those errors deprive defendants of basic protections, such that their trials are not a reliable vehicle for determining guilt. *Moon*, 2022 IL 125959, ¶ 38 (citing *Neder v. United States*, 527 U.S. 1, 8-9 (1999)). Such errors are harmful in themselves, "*regardless* of the strength of the evidence." (Emphasis in original.) *People v. Blue*, 189 Ill. 2d 99, 138 (2000).

¶ 67    Naturally, the opposite of harmful is harmless, so harmlessness is a relevant gauge in determining that the error has not reached the high bar for second-prong plain errors set in *Herron* and subsequent cases. That is, if a reviewing court can conclude that a constitutional error was harmless beyond a reasonable doubt, that error did not affect the fairness of the defendant's trial or challenge the integrity of the judicial process and, consequently, is not a second-prong plain error. *Id.* at 137-38; see *People v. Johnson*, 2025 IL 130447, ¶ 56 ("An error that, if preserved, would be considered exclusively for harmless error cannot evolve into *** second prong plain error when it is unpreserved."); *Jackson*, 2022 IL 127256, ¶ 49 ("second-prong plain error can be invoked only for *** errors that are not subject to harmless error analysis"); see also *People v. Ratliff*, 2024 IL 129356, ¶ 37 ("if a constitutional claim can be harmless beyond a reasonable doubt, it does not affect the fundamental fairness of a defendant's trial" (citing *Moon*, 2022 IL 125959, ¶ 28)).

¶ 68    This court has long adhered to a strong presumption that most errors of constitutional dimension are subject to harmless error analysis. See, *e.g.*, *People v. Stoecker*, 2020 IL 124807, ¶ 23; *Moon*, 2022 IL 125959, ¶ 28 (stating that "most constitutional errors can be harmless"). We believe that includes denial of the constitutional right to a preliminary hearing under article I, section 7.

¶ 69    A violation of article I, section 7, is the type of error that we have described previously as "amenable to harmless error analysis." *Jackson*, 2022 IL 127256, ¶ 49. "A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." *Barber v. Page*, 390 U.S. 719, 725 (1968). Article I, section 7, created a right with such a limited purpose. *People v. Horton*, 65 Ill. 2d 413, 416 (1976). The appellate court here apprehended that, stating that a preliminary hearing serves " 'to determine whether there is sufficient indication that a crime has been committed by the accused to justify his further detention.' " 2024 IL App (5th) 220492, ¶ 13 (quoting Note, *The Function of the Preliminary Hearing in Federal Pretrial Procedure*, 83 Yale L.J. 771, 772 (1974)). The appellate court misapprehended that a preliminary hearing is intimately interrelated to the trial. *Id.*

¶ 70    A preliminary hearing is preliminary to trial and almost entirely unrelated to any subsequent trial proceedings, so the denial of a prompt preliminary hearing is not "indispensable to a fair trial" (*Jackson*, 2022 IL 127256, ¶ 46) and cannot render those proceedings "fundamentally unfair or *** an unreliable means of determining guilt or innocence" (*Moon*, 2022 IL 125959, ¶ 28). That error is always harmless when the defendant is later convicted because the trier of fact has found guilt beyond a reasonable doubt and not just probable cause. See *Scarbrough v. Dutton*, 393 F.2d 6, 7 (5th Cir. 1968) (*per curiam*) ("The failure to hold a preliminary hearing, without more, does not amount to a violation of constitutional rights which would vitiate the subsequent conviction."); *cf. United States v. Mechanik*, 475 U.S. 66, 70 (1986) ("[T]he petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding *** was harmless beyond a reasonable doubt."). Stated differently, a defendant could have a fair trial, even if the defendant was never given a preliminary hearing. Indeed, "[t]he most important protection for an accused in our system of law is a fair trial itself" (*People v. J.H.*, 136 Ill. 2d 1, 12 (1990)), not a preliminary hearing.

¶ 71    Finally, we believe that *Howell*, 60 Ill. 2d 117, controls our decision in this case. There, this court reiterated the import of article I, section 7, stating "under this constitutional provision the defendant held on a criminal charge punishable by imprisonment in the penitentiary must be afforded a prompt probable-cause determination of the validity of the charge either at a preliminary hearing or by an indictment by a grand jury." *Id.* at 119. The court concluded that holding the defendant for 65 days without giving him a prompt preliminary hearing "violated the letter and intent" of section 7. *Id.*

¶ 72    The court queried, "What consequences then flow from such a violation?" *Id.* at 120. The court stated, however, that the nature of any remedy "is of little concern in the disposition of the present case." *Id.* The court observed that the defendant did not raise the preliminary hearing issue before the trial court. *Id.* The appellate court considered the issue under Rule 615(a), but this court disagreed with that approach. *Id.* According to the court, Rule 615(a) does not "mandate that a reviewing court consider all errors involving substantial rights whether or not they had been raised in the trial court." *Id.* (citing *People v. Pickett*, 54 Ill. 2d 280, 282 (1973)). Instead,

- 19 -

Rule 615(a) "permits the court on review to take notice of errors appearing upon the record which deprive the accused of substantial means of enjoying a fair and impartial trial." *Id.* at 121. The court acknowledged that the delay in giving the defendant a prompt preliminary hearing was "a serious deprivation of his constitutional rights" (*id.* at 122) but concluded that "[u]nder the facts of this case we do not feel that the denial of this right deprived the accused of a substantial means of enjoying a fair and impartial trial" (*id.* at 121).

¶ 73    We reach the same conclusion. *Under the facts of this case*, the trial court's error in not affording a preliminary hearing to the defendant, as required by article I, section 7, of the Illinois Constitution, did not affect the fairness of the defendant's trial or challenge the integrity of the judicial process. Consequently, that error did not rise to the level of second-prong plain error, and we must honor the defendant's forfeiture.

¶ 74                                              CONCLUSION

¶ 75    For the reasons that we have stated, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 76    Appellate court judgment reversed.

¶ 77    Circuit court judgment affirmed.

¶ 78    JUSTICE O'BRIEN, dissenting:

¶ 79    The majority concludes here that the ends justify the means in finding that the trial court's failure to provide defendant with a preliminary hearing to establish probable cause to detain him prior to trial does not constitute second-prong or structural plain error. I disagree. The right to a preliminary hearing is both constitutional and statutory, and the failure to hold one violates both our state constitution and our statutes. In my view, the lack of a probable cause finding made at a preliminary hearing adversely reflects on the integrity and reputation of the judicial process and undermines the fairness of a trial. I would recognize the trial court's error here as structural error.

¶ 80 Although the majority correctly finds that "clear or obvious error occurred" here (see *supra* ¶ 65), it errs in concluding that the plain error does not constitute structural error reviewable under the second prong of the plain error doctrine. The majority concludes that, despite the lack of a constitutionally and statutorily required probable cause finding at a preliminary hearing prior to detaining defendant, the error was not structural because defendant was subsequently found guilty beyond a reasonable doubt by a jury of his peers. *Supra* ¶ 70. This perspective upends the constitutional protections afforded defendants.

¶ 81 The majority's inquiry misses the significance of the constitutional right at issue. Although defendant was found guilty beyond a reasonable doubt following his jury trial, our state constitution requires that a finding of probable cause be made before a defendant is detained. Ill. Const. 1970, art. I, § 7 ("No person shall be held to answer for a crime punishable *** by imprisonment in the penitentiary unless *** the person has been given a prompt preliminary hearing to establish probable cause."). This right is further reinforced in our state statutes. See 725 ILCS 5/109-3(a) (West 2020) ("The judge shall hold the defendant to answer to the court having jurisdiction of the offense if from the evidence it appears there is probable cause to believe an offense has been committed by the defendant, as provided in Section 109-3.1 of this Code, if the offense is a felony."); *id.* § 109-3.1(b) (preliminary hearing must be held within 30 days of the date a defendant was taken into custody); *id.* § 114-1(a)(11) (defendant may move to dismiss the charges if the timing requirements of section 109-3.1(b) of the Code are not met). A probable cause finding before being held to answer for a crime is a basic constitutional right. See *People v. Petruso*, 35 Ill. 2d 578, 580-81 (1966) (recognizing probable cause determination as a basic constitutional right); *People v. Kirkley*, 60 Ill. App. 3d 746, 750 (1978) (same). As the appellate court noted, the "probable cause determination is a prerequisite for an extended pretrial detention" and necessary "for any significant pretrial restraint of liberty." (Internal quotation marks omitted.) 2024 IL App (5th) 220492, ¶ 14.

¶ 82 Dismissing the importance of the constitutional and statutory requirements, the majority reasons that the guilty verdict at defendant's trial negates any adverse consequences from the trial court's failure to ascertain that probable cause existed to detain defendant. That determination is contrary to the purpose of a preliminary hearing and negates the importance of the constitutional requirement to decide if

there is probable cause before detaining someone. The majority proclaims that the failure to hold a preliminary hearing is an error that "is always harmless when the defendant is later convicted because the trier of fact has found guilt beyond a reasonable doubt and not just probable cause." *Supra* ¶ 70. Under this reasoning, neither the State nor the trial court has any obligation to adhere to our constitutional and statutory requirement to hold a preliminary hearing to decide probable cause before detaining a defendant. If the defendant is found guilty beyond a reasonable doubt following a trial, the unconstitutional detention of a defendant is thus excused. Our constitution does not operate that way.

¶ 83 The cases on which the majority depends for its conclusion that the lack of a preliminary hearing, and accordingly a finding of probable cause, constitutes harmless error do not support it. In *People v. Jackson*, 2022 IL 127256, ¶ 1, at issue was posttrial jury polling. Because the polling took place after the trial, it could not have affected the trial. Here, though, the unlawful detention adversely affected defendant before the trial. Indeed, he was detained for 233 days without a finding that a crime was committed and he committed it. The majority looks to *People v. Moon*, 2022 IL 125959, ¶ 28, for the proposition that the denial of a preliminary hearing "cannot render those proceedings 'fundamentally unfair or *** an unreliable means of determining guilt or innocence.' " *Supra* ¶ 70 (quoting *Moon*, 2022 IL 125959, ¶ 28). In *Moon*, this court determined that the trial court's failure to swear in the jury prior to trial to be structural error and amenable to second-prong plain error review despite the jury finding defendant guilty beyond a reasonable doubt. *Moon*, 2022 IL 125959, ¶ 64. We found the error affected "the framework within which the trial proceeds, rather than being merely an error in the trial process itself." *Id.* ¶ 62. In making that finding, we recognized the direct role of the oath in securing the defendant's right to an impartial jury. *Id.* ¶ 60. Like the impact the oath may have on a juror's mind, the finding of probable cause prior to detention also impacts the jury's perspective of the defendant. In our criminal justice system, we expect that individuals are not detained without being connected to the crime. Like the failure to give the jury its oath in *Moon*, the detention of defendant prior to trial without a finding of probable cause affects the very framework of the trial.

¶ 84 The majority also relies on *Scarbrough v. Dutton*, 393 F.2d 6, 6-7 (5th Cir. 1968) (*per curiam*), where the appellant alleged a due process violation when he was not afforded a preliminary hearing prior to being detained for seven months

- 22 -

before trial, which the reviewing court rejected. The reviewing court stated that the lack of preliminary hearing, "without more," did not constitute a constitutional violation that would negate the conviction. *Id.* at 7. This case is distinguishable. Unlike in Illinois, the right to a preliminary hearing in Georgia is not a constitutional right but only a statutory one. See *id.* at 8 n.1 (Fahy, J., dissenting). Another critical distinction with *Scarbrough* is its pronouncement that, under Georgia state law, a preliminary hearing "is not *per se* a critical stage of a criminal proceeding." *Id.* at 7 (majority opinion). In Illinois, we recognize that a preliminary hearing is a critical stage of the criminal process. See *People v. Adams*, 46 Ill. 2d 200, 206 (1970) (preliminary hearing conducted under section 109-3 is a " 'critical stage' in this State's criminal process"), *aff'd*, 405 U.S. 278 (1972); *People v. Black*, 2011 IL App (5th) 080089, ¶ 15 ("Illinois has long recognized that a preliminary hearing is a critical stage in prosecution."). The majority cites *United States v. Mechanik*, 475 U.S. 66, 70 (1986), for the proposition that the guilty verdict satisfies the probable cause requirement and that the lack of a preliminary hearing is harmless error. *Supra* ¶ 70. At issue was an error in the grand jury proceedings where two agents testified in tandem in violation of federal rule. *Mechanik*, 475 U.S. at 67. Distinguishing that case is that the defendant was indicted by the grand jury, while here there was no probable cause finding. The *Mechanik* defendant was not detained prior to trial without the State connecting him to a crime.

¶ 85 The majority also relies on our decision in *People v. Howell*, 60 Ill. 2d 117 (1975), finding it controlling and that it dictates that the trial court's failure to hold a preliminary hearing did not deprive defendant of a fair trial. *Supra* ¶¶ 71-72. *Howell*, however, is not an apt comparison. In that case, the defendant was indicted before the preliminary hearing was scheduled and thus was not detained until trial without a probable cause finding. *Howell*, 60 Ill. 2d at 119-20. In contrast here, defendant was never indicted, no preliminary hearing was held, and no finding of probable cause was made. Defendant was held to answer for 233 days before trial for a crime without the State connecting him to any offense, in violation of our constitution's directives.

¶ 86 While in *Howell* we rejected the defendant's plain error argument under the facts of that case, we noted the importance of the constitutional right at issue, acknowledging "the delays in giving an accused a prompt preliminary hearing to be a serious deprivation of his constitutional rights." *Id.* at 122-23. This court has

recognized the importance of the constitutional right the preliminary hearing statute protects in other cases as well. See *People v. Hendrix*, 54 Ill. 2d 165, 169 (1973) (recognizing that without probable cause finding a defendant cannot be " 'held to answer,' or brought to trial"); *People v. Holman*, 103 Ill. 2d 133, 155 (1984) (suggesting that sanctions may be appropriate when the State delays a preliminary hearing solely so a grand jury may indict instead); *People v. Riddle*, 141 Ill. App. 3d 97, 100 (1986) (failure to provide prompt preliminary hearing or indict defendant "unquestionably violated the letter and intent" of article I, section 7, of the Illinois Constitution of 1970). Although untimely, a delayed preliminary hearing still serves to test whether there is probable cause to detain a defendant. Where there is no preliminary hearing and no probable cause finding, the State detains a defendant in violation of his constitutional rights. See *People v. Redmond*, 67 Ill. 2d 242, 246 (1977) ("[T]his court has stated that the first purpose of the provision [(Ill. Const. 1970, art. I, § 7)] is to insure that a defendant is not held without a prompt showing of probable cause.").

¶ 87    The majority finds the lack of a preliminary hearing to be harmless error, finding, as discussed above, that the subsequent guilty verdict negates the constitutional error and concluding that the error does not constitute second-prong, or structural, error. *Supra* ¶ 72. The structural error doctrine serves to ensure that " 'certain basic, constitutional guarantees' " define the framework of a criminal trial. *Jackson*, 2022 IL 127256, ¶ 29 (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017)). The United States Supreme Court has offered three "rationales" in support of why an error may be deemed structural. *Weaver*, 582 U.S. at 295. The first rationale is "if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest." *Id.* Second, an error is structural where "the effects of the error are simply too hard to measure." *Id.* The third rationale includes errors that "always result[ ] in fundamental unfairness," to which the government's attempts to show the error was harmless would be futile. *Id.* at 296. The United States Supreme Court has limited the categories of structural error to the following: "a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." *People v. Averett*, 237 Ill. 2d 1, 13 (2010). We are not bound by the limited instances of structural error found by the United States Supreme Court but may decide "an error is structural as a matter of state law." *Id.*

¶ 88    This court has recognized structural error beyond those categories acknowledged by the United States Supreme Court. We have included violations of one-act, one-crime principles (*People v. Coats*, 2018 IL 121926, ¶ 10; *People v. Artis*, 232 Ill. 2d 156, 168 (2009); *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009)), convictions on an uncharged but not lesser-included offense (*People v. Clark*, 2016 IL 118845, ¶ 47), a trial judge's absence from the courtroom during a felony jury trial (*People v. Vargas*, 174 Ill. 2d 355, 366 (1996)), an arbitrary and reflexive denial of defense counsel's request to continue (*People v. Walker*, 232 Ill. 2d 113, 131 (2009)), admission of a polygraph test taken by a witness (*People v. Gard*, 158 Ill. 2d 191, 205 (1994)), cumulative errors (*People v. Blue*, 189 Ill. 2d 99, 138-39 (2000)), entry of a street-value fine without a proper evidentiary hearing (*People v. Lewis*, 234 Ill. 2d 32, 48 (2009)), and a pattern of intentional prosecutorial misconduct (*People v. Johnson*, 208 Ill. 2d 53, 84-85 (2003)).

¶ 89    The thread linking the above cases and justifying expansion of the categories of structural error is that the errors that took place threatened the integrity of the justice system. See *Coats*, 2018 IL 121926, ¶ 10 (one-act, one-crime violation is error "so serious that it challenges the integrity of the judicial process"); *Artis*, 232 Ill. 2d at 168 (noting "one-act, one-crime violations as adversely affecting the integrity of the judicial process"); *Samantha V.*, 234 Ill. 2d at 378 ("a one-act, one-crime violation affects the integrity of the judicial process"); *Clark*, 2016 IL 118845, ¶ 47 ("unauthorized conviction challenges the integrity of the judicial process"); *Vargas*, 174 Ill. 2d at 366 ("[T]otal judicial absence for a portion of a felony trial *** is *per se* reversible because such error is inherently prejudicial *** to the integrity of the judicial process."); *Walker*, 232 Ill. 2d at 131 ("error was so serious that it demonstrably affected the fairness of defendant's trial and challenged the integrity of the judicial process"); *Gard*, 158 Ill. 2d at 205 ("error compromis[ed] the integrity and tarnish[ed] the reputation of the judicial process itself"); *Blue*, 189 Ill. 2d at 139 (holding that "a new trial is necessary in order to preserve the trustworthiness and reputation of the judicial process"); *Lewis*, 234 Ill. 2d at 49 ("error challenges the integrity of the judicial process and undermines the fairness of defendant's sentencing hearing"); *Johnson*, 208 Ill. 2d at 84 ("a new trial is necessary in this case to preserve and protect the integrity of the judicial process"). Recently, in *Moon*, 2022 IL 125959, ¶ 27, we noted that structural errors are errors of "such gravity" that they threaten the integrity of the judicial process and correction is required to preserve and protect the process's fairness and reputation.

¶ 90 I would find the lack of a probable cause determination at a preliminary hearing before defendant was detained and brought to answer for a crime to be one of those grave errors we recognized in *Moon* and the other cases set forth above, affecting the very framework of the judicial process. When a defendant appears before a jury in our criminal system, the jurors may reasonably assume there has been a determination of probable cause to support that the person before the jury committed the charged offense or offenses. See 725 ILCS 5/102-17 (West 2020) (a judge determines at the preliminary hearing whether there is probable cause to believe the accused has committed an offense); *id.* § 109-3(a) (defendant may be detained if probable cause to believe he committed an offense exists); *People v. Smith*, 236 Ill. 2d 162, 169 (2010) (probable cause means that there is some evidence to believe that a crime has been committed and the defendant committed it); *People v. Edwards*, 144 Ill. 2d 108, 127-28 (1991) (same).

¶ 91 When a defendant is detained without a finding of probable cause connecting him to the offense, the State enjoys a presumption of probable cause for which there is no basis, linking a defendant to a crime without any foundation for the connection. In essence, the State presents to a jury a defendant who has not been tied to the offense for which he was arrested. This conduct violates our constitution, and the violation is what the probable cause requirement is designed to prevent. See 2024 IL App (5th) 220492, ¶ 13 ("The function of a preliminary hearing is 'to provide an early and independent check on the initial decision of the police or the district attorney to prosecute.' " (quoting Delmar Karlen, Anglo-American Criminal Justice 145 (1967))); *Kaley v. United States*, 571 U.S. 320, 329 (2014) (noting the "grand jury's 'historical role of protecting individuals from unjust persecution' " (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975))). The appellate court recognized the error here "deprived the defendant of the basic protections afforded by our constitution and, thus, proceeding forward with the prosecution without providing that protection resulted in an unfair or unreliable process for the determination of the defendant's guilt or innocence." 2024 IL App (5th) 220492, ¶ 25.

¶ 92 Because of the constitutional significance of the probable cause determination to our system of justice, I believe that the trial court's failure to make the required finding necessarily implicates the framework of a defendant's trial and is a structural error. The three rationales underlying structural error put forth by the

United States Supreme Court also support my conclusion that the error here was structural error. The first rationale is whether the right protects defendant's interest from something other than a wrongful conviction. *Weaver*, 582 U.S. at 295. The right at issue here does not prevent an erroneous conviction. Defendant was convicted by the jury, and he does not challenge the sufficiency of the evidence or the guilty verdict. Defendant's challenge is directed at his detention without a probable cause finding. The right at issue is defendant's liberty, and the probable cause requirement protects that right by ensuring a defendant is not detained before trial and brought to answer for a crime without some evidence that a crime was committed and he committed it. The second rationale equates structural error with errors whose effect cannot be measured. *Id.* The failure to find probable cause before detaining a defendant is impossible to quantify. The loss of liberty has far-reaching implications, including social stigma; potential loss of employment and housing; and separation from family, friends, and community. *Gerstein*, 420 U.S. at 114 ("Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships."). The failure to find probable cause before detaining someone also negatively impacts the integrity of the criminal justice system by ignoring critical rights afforded to a defendant and allows the State to detain people without evidence connecting them to a crime. The third rationale considers whether the error always results in fundamental unfairness. *Weaver*, 582 U.S. at 296. Because a probable cause determination is an essential part of our criminal justice structure, its lack always threatens the fairness of the system. See *Adams*, 46 Ill. 2d at 206 (preliminary hearing is critical stage of criminal process entitling a defendant to counsel).

¶ 93      The foundation underlying the need for a preliminary hearing stems from an individual's right to be free from unlawful seizure and detention. See *Redmond*, 67 Ill. 2d at 246 (judicial determination of probable cause as a prerequisite to an extended restraint of liberty following an arrest is required by article I, section 7, of our state's constitution (Ill. Const. 1970, art. I, § 7)). These rights serve to protect citizens against unlawful detention. See *Gerstein*, 420 U.S. at 112 (probable cause requirement implements the "Fourth Amendment's protection against unfounded invasions of liberty and privacy"); *Brinegar v. United States*, 338 U.S. 160, 176 (1949) (standards and procedures for detention "seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime").

¶ 94 Our constitution does not allow the State to proceed against defendant without the required finding of probable cause. This error results in an unfair and unreliable process and threatens the integrity of the justice system and the public's confidence in it. See 725 ILCS 5/111-2(a) (West 2020) (State cannot prosecute without indictment or a timely preliminary hearing finding probable cause); *People v. Afandi*, 2024 IL App (1st) 221282, ¶ 35 (State obligated to protect the constitutional rights of defendants (citing *People v. Jackson*, 2021 IL 124818, ¶ 52 (Neville, J., specially concurring))); *People v. Karim*, 367 Ill. App. 3d 67, 83 (2006) (determining that procedures ensuring a prompt probable cause determination uphold confidence in the constitutionality of the procedures (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991))). " ' "The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence." ' " *People v. Wheeler*, 151 Ill. 2d 298, 311 (1992) (quoting *United States v. Nobles*, 422 U.S. 225, 231 (1975), quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974)). Like the jury oath at issue in *Moon*, the necessity of a probable cause finding before a defendant may be detained is a necessary component of our criminal justice system as required by our state constitution.

¶ 95 The majority asserts that the lack of a preliminary hearing did not affect the fairness of defendant's trial. The focus, however, should be on the unfairness of the process and its effect on the integrity of the justice system, and not the finding of guilt. The lack of a probable cause finding before defendant was detained rendered his trial an unreliable means to determine his innocence or guilt. " 'It is not a miscarriage of justice to convict a guilty man, but if he is convicted in a way inconsistent with the fairness and integrity of judicial proceedings, then the courts should invoke the plain error rule in order to protect their own public reputation.' " *People v. Green*, 74 Ill. 2d 444, 455 (1979) (Ryan, J., specially concurring) (quoting 3 Charles A. Wright, Federal Practice and Procedure § 856, at 374 (1969)). Contrary to the majority's determination, the guilty verdict does not vitiate the constitutional error that occurred: detaining defendant for 233 days without any determination there was probable cause that he committed a crime.

¶ 96 Because I find that the lack of a preliminary hearing and probable cause finding violated defendant's constitutional rights and adversely affected the integrity of the criminal justice process, I would affirm the appellate court's finding of structural

error, reverse defendant's convictions, and remand for the trial court to start the proceedings anew, including a probable cause determination. These are fraught times in our country, and it is vital that we uphold the protections afforded by our constitution. For these reasons, I dissent.

¶ 97        CHIEF JUSTICE NEVILLE joins in this dissent.