2026 IL App (1st) 242021-U

No. 1-24-2021

Order filed May 8, 2026

SIXTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 09081 |
| | ) | |
| ROMAN LOBO-SAUCEDA, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices C.A. Walker and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm defendant's sentence for aggravated criminal sexual assault over his contentions that the court plainly erred by considering improper factors and that counsel was ineffective for failing to raise the issue. Under the one-act, one-crime doctrine, we vacate defendant's criminal sexual assault and aggravated battery convictions.

¶ 2    Following a bench trial, defendant Roman Lobo-Sauceda was found guilty of criminal sexual assault, aggravated criminal sexual assault, and aggravated battery of a pregnant person and sentenced to an aggregate term of 17 years' imprisonment. (Defendant's first name also appears

as "Ramon" in the record.) On appeal, defendant argues that the court committed plain error by relying on facts unsupported by the evidence at sentencing, and that counsel was ineffective for failing to raise the issue. Defendant also contends that his convictions for criminal sexual assault and aggravated battery each violate the one-act, one-crime doctrine. We affirm in part and vacate in part.

¶ 3 After an incident between defendant and B.M. on July 21, 2022, defendant was charged with aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(4) (West 2022)), premised on committing aggravated domestic battery (count I) and aggravated battery to a pregnant person (count II); aggravated domestic battery by strangulation (720 ILCS 5/12-3.3(a-5) (West 2022)) (count III); and aggravated battery to a pregnant person by grabbing B.M.'s neck and face (720 ILCS 5/12-3.05(d)(2) (West 2022)) (counts IV and V, respectively).[1] The State alleged in counts I and II that defendant "committed an act of sexual penetration upon [B.M.] ***: contact between the penis of [defendant] and the sex organ of [B.M.]."

¶ 4 We restate the trial evidence as relevant on appeal.

¶ 5 B.M. testified, through a Spanish-language interpreter, that she had been in a three-year relationship with defendant, whom she identified in court, when they lived in Honduras. During that time, defendant fathered B.M.'s eldest daughter, later identified as A.L. At some point, defendant moved to the United States with A.L. In April 2021, eight years after B.M. and defendant had separated, B.M. and her daughter from another relationship, later identified as D.G., joined

---

[1] We refer to B.M. and her daughters, A.L. and D.G., by their initials to protect their privacy. See *People v. Kline*, 2024 IL App (1st) 221595, ¶ 3 n.1. (B.M.'s initials also appear as B.N-M. and B.N.M.A. in the record.)

defendant and A.L. B.M. and defendant renewed their relationship but separated again on May 12, 2022.

¶ 6    Afterwards, B.M. and her daughters continued to live with defendant in a studio apartment in Chicago "because of the rent." The apartment contained a kitchen, a combined living and sleeping area, a closet, and a bathroom. Before testifying, B.M. had drawn a diagram of the apartment, People's Exhibit No. 1, which is included in the record on appeal and has been reviewed by this court. In relevant part, the diagram depicts a wall dividing the closet on the left from the main space on the right. The closet contains a bed, which adjoins the dividing wall. The main room also contains a bed. The dividing wall and what appears to be a narrow space separate the bed in the main room from the one in the closet. During B.M.'s testimony, she drew a green circle on the bed in the main room, identifying it as the one she slept in after she separated from defendant, and a red circle on the bed in the closet, identifying it as where he slept after their separation. A.L. and D.G. slept in the bed in the main room.

¶ 7    On July 21, 2022, B.M. was in bed with A.L. and D.G., then 11 years old and 3 years old, respectively. Defendant arrived and placed a hand on B.M.'s chest, telling her he wanted to talk. When she replied, "[N]o," he responded, "[I]f it is not going to be on good terms, then it is going to be on bad terms." B.M. walked to the closet with defendant, who "kind of closed the door," and insisted that she sit down, although she initially refused.

¶ 8    Defendant and B.M. sat on the bed. B.M. was four months pregnant with defendant's child, and they argued "regarding the pregnancy." She asked him for help with the children, and defendant remarked that "the baby [was] the problem." Defendant stood up, threatening to "grab

a knife and kill" the unborn baby. B.M. told defendant to "calm down" and that he would wake A.L. and D.G. Defendant responded, "I can go get the girls so they can see."

¶ 9　Defendant sat back on the bed and said, "You don't know me on bad terms." He then "launched" himself at B.M. and was "on top of" her, holding her down and grabbing her by the neck and mouth. She could not breathe normally—only "a little." B.M. pushed defendant away with her hands.

¶ 10　Defendant sat back down and stated, "[Y]ou are not leaving the bedroom if nothing happens." B.M. understood that meant she could not leave unless they "had intimacy," which they had not engaged in since their separation. She did not want to be intimate with defendant and told him "no" multiple times. Defendant said, "[T]hen you are not leaving from here." B.M. tried to leave but defendant grabbed her arm, and she fell facedown on the bed. Defendant removed her clothes and penetrated her vagina with his penis. Crying because she did not want to be intimate with defendant, B.M. told him, "[N]o, no." Defendant "continued" and asked why she was crying. Then, he stopped.

¶ 11　B.M. left the closet and returned to the bed in the main room with A.L. and D.G. while defendant remained in the closet. B.M. called the police, who came and arrested defendant. The next morning, B.M. went to the hospital where she had a physical examination, and evidence was collected from her body. There, B.M. noticed scratches on her back and marks on her neck. Photographs of the marks on her neck were taken at the hospital, were published at trial, and are included in the record on appeal.

¶ 12　On cross-examination, B.M. elaborated that the closet door was "partially open" and that defendant spoke in a "normal voice" during their argument, although he raised his voice when

threatening their unborn child and stating that he did not care about waking A.L. and D.G. B.M. told him, in "a raised voice," to let her leave. B.M. added that, during the assault, defendant held her down by her hips despite her attempts to escape. A.L. and D.G. remained asleep in the main room. When asked if she was "screaming 'no'" or speaking in a "relatively quiet voice," B.M. testified that her concern was her daughters seeing the attack. The assault lasted approximately five minutes, and, according to B.M., the children did not wake.

¶ 13    The parties stipulated, among other things, that certified sexual assault nurse examiner Girlie Marcelo would testify that, while she treated B.M., B.M. stated that defendant had "vaginally penetrated her."

¶ 14    Defendant testified, through a Spanish-language interpreter, that he and B.M. resumed their relationship when she joined him in the United States, and they remained together until his arrest the night of July 21, 2022. During this period, they were intimate three to four times a week and initiated intimacy mutually.

¶ 15    According to defendant, the apartment measured five feet by seven feet, and the beds in the closet and the main room were "right next to each other." When asked if the beds were less than three feet apart, defendant stated, "There was just a wall dividing it and like the width of this here." In court, defendant demonstrated the width, and defense counsel stated for the record that defendant had indicated the space was "approximately three inches." Defendant could hear someone "speaking in a normal voice" from the opposite end of the apartment and could hear neighbors.

¶ 16    Defendant arrived home on July 21, 2022, at approximately 1:30 a.m., and went to the bathroom, which was located through the closet. B.M. followed him there and asked why he was

home so late. She accused him of being with other women, and defendant agreed to talk. They sat on the bed in the closet, which defendant said was normally where the children slept. He usually slept in the bed in the main room with B.M. Defendant and B.M. argued about naming their unborn child, and defendant returned to the bathroom.

¶ 17    Defendant exited the bathroom into the closet and found B.M. naked on the bed. She told him she was "ready" and "wanted to calm down the bad moment" of the argument. They had sexual intercourse, and B.M. never said no or tried to push him off her. Defendant denied strangling her, covering her mouth, or preventing her from leaving. Afterwards, B.M. returned to the main room, and defendant remained in the closet.

¶ 18    On cross-examination, defendant stated that A.L. was awake "with her telephone" in the bed in the main room when he arrived home, during his conversation with B.M. in the closet, and when he found B.M. naked in the closet. Defendant agreed that the dividing wall was approximately "three inches thick."

¶ 19    After closing arguments, the trial court found defendant guilty of counts IV and V for aggravated battery to a pregnant person. On count III, for aggravated domestic battery by strangulation, the court found defendant guilty of the lesser-included offense of domestic battery. The trial court also found defendant guilty of count II for aggravated criminal sexual assault predicated on committing aggravated battery to a pregnant person when committing criminal sexual assault. Because the court did not find defendant guilty of aggravated domestic battery on count III, it found him guilty of the lesser-included offense of criminal sexual assault on count I. When delivering its verdict, the court stated that it found B.M.'s testimony credible and defendant's "in large part" incredible.

¶ 20    Defendant filed a motion for reconsideration and a new trial, which the trial court denied.

¶ 21    At sentencing, the parties amended defendant's presentence investigative report (PSI). The PSI, as amended, is included in the record on appeal. It indicates that defendant was born in Honduras and was 35 years old at the time of sentencing. He described his childhood as "happy but poor" and his relationship with his mother as "good," but he declined to describe his relationship with his deceased father. Defendant had good relationships with his brothers and sisters and said that his family was supportive. He had never been married and had five children, whose ages ranged from 1 to 12, although he had not had any contact with his children since his arrest. Defendant additionally said that he had many close friends who were supportive.

¶ 22    Defendant reported graduating from high school and attending other institutions in Honduras. He took four months of English-language classes in Chicago and wanted to resume those classes. Prior to his incarceration, defendant worked full-time as a laborer and as a cook before that. He was confident he could obtain employment upon release.

¶ 23    Defendant characterized his health as "good" and stated that he did not take medications or suffer from serious conditions. He had "never had a problem with alcohol." He began drinking at 22 years of age and would consume "only a few drinks on special occasions." Defendant denied illegal drug use.

¶ 24    Defendant's PSI did not list any prior criminal history.

¶ 25    The State argued in aggravation that defendant's assault was a violent attack against a household member, the mother of his children, that occurred with children present. The State highlighted the physical and emotional toll of the assault on B.M. and her testimony that she remained quiet to protect her children.

¶ 26    In mitigation, the defense argued that the minimum sentence was sufficient deterrence. Counsel emphasized that defendant had his family's support, and that he lacked a criminal history. Counsel also highlighted that defendant had completed courses while incarcerated.

¶ 27    Defendant did not speak in allocution, explaining, through a Spanish-language interpreter, that he was "not very well in expressing" himself and became "very nervous" when speaking.

¶ 28    The trial court stated that the findings of guilt on counts I and II, criminal sexual assault and aggravated criminal sexual assault, respectively, reflected "separate acts," so count I was not a lesser-included offense of count II. Because of this, defendant was "facing mandatory consecutive sentencing ***." The court also said that count III for domestic battery and count V for aggravated battery would merge into count IV for aggravated battery. Accordingly, the court would sentence defendant for counts I, II, and IV.

¶ 29    The trial court stated that it had considered defendant's PSI, counsels' arguments, statutory and non-statutory factors in aggravation and mitigation, and defendant's completed coursework. The court also considered defendant's character, the seriousness of the offense, and "the objective in restoring [defendant]'s useful citizenship."

¶ 30    The trial court characterized defendant's conduct as "reprehensible." According to the court, what defendant had done "to the mother of [his] children when [his] children were there [was] just incredibly repugnant." The court then commented, "Now, you may have been drunk or under the influence of alcohol, and I understand there was some—it was a strange, awkward living situation" since defendant and B.M. continued to live together despite their separation.

¶ 31    The court stated that B.M. was a "victim." Defendant had "victimized her, [he] victimized [his] children, because as much as she tried to be silent," the court could not "imagine that they

didn't hear something." The court said defendant's conduct was "despicable" and "something that society cannot allow." The court found that the aggravating statutory factor of deterrence "absolutely applie[d] *** without question."

¶ 32    In mitigation, the trial court noted that defendant's PSI did not include any criminal history and showed that he was "a productive member of society." The court was "mindful" of defendant's completed coursework and stated that defendant was capable of benefitting the community. The court also considered defendant's "happy childhood" and that he immigrated to the United States to obtain "a better life" for himself and his family. However, the trial court said any mitigating factors did not "outweigh *** the horrific crime" defendant had committed.

¶ 33    The trial court imposed 5 years' imprisonment on count I for criminal sexual assault and 12 years' imprisonment on count II for aggravated criminal sexual assault, to run consecutively. The court also imposed five years' imprisonment on count IV for aggravated battery, to run concurrently to his sentences for counts I and II.

¶ 34    Defendant did not file a motion to reconsider his sentence.

¶ 35    On appeal, defendant first argues that his 12-year sentence for aggravated criminal sexual assault was in error because the trial court considered facts unsupported by the evidence at sentencing.

¶ 36    Defendant admits that he did not preserve this issue for our review but requests that we review it for plain error or ineffective assistance of counsel. Generally, an appellant must preserve an issue for a reviewing court by objecting at trial and in a posttrial motion. *People v. Brown*, 2025 IL App (1st) 230772, ¶ 71. Otherwise, the issue is forfeited. *Id.* We may consider an unpreserved issue under plain error review, which is available where "a clear or obvious error occurred" and

either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice" or (2) "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process ***." (Internal quotation marks omitted.) *People v. Chambliss*, 2026 IL 130585, ¶ 61. A defendant bears the burden of establishing plain error (*People v. Quezada*, 2024 IL 128805, ¶ 51) and ineffective assistance of counsel (*People v. Yankaway*, 2025 IL 130207, ¶ 61) and cannot succeed under either if he fails to show that error occurred (*People v. Spears*, 2024 IL App (1st) 181491, ¶ 212).

¶ 37 Trial courts have "broad" discretion when rendering a defendant's sentence. (Internal quotation marks omitted.) *Brown*, 2025 IL App (1st) 230772, ¶ 150. In exercising this discretion, a court must consider all factors in aggravation and mitigation (*People v. Colone*, 2024 IL App (1st) 230520, ¶ 135; 730 ILCS 5/5-4-1(a)(4) (West 2022)) and "must exercise care to [e]nsure the accuracy of information considered and to shield itself from what might be the prejudicial effect of improper materials" (*People v. Jackson*, 149 Ill. 2d 540, 549 (1992) (internal quotation marks omitted)). A court cannot base a sentence on speculation or conjecture. *People v. Zapata,* 347 Ill. App. 3d 956, 964, 966 (2004) (vacating the defendant's sentence where trial court's "distaste" for gang violence was an improper sentencing factor as no evidence established that the offense was gang-related).

¶ 38 A reviewing court accords a trial court's judgment "great deference" and will only alter a sentence where a trial court has abused its discretion. *People v. Wade*, 2025 IL App (1st) 231683, ¶ 70. We presume a sentence within the statutory range is proper absent an abuse of discretion, which occurs " 'where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *People v. Webster*, 2023 IL 128428,

¶ 21 (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)). A court abuses its discretion when it relies upon an improper factor in sentencing, and we review *de novo* whether a court relied on an improper factor. *People v. Streater*, 2023 IL App (1st) 220640, ¶ 73. When determining whether the trial court did so, "we focus on the entire record as opposed to a few words or statements by the sentencing court." *People v. Williams*, 2019 IL App (1st) 173131, ¶ 24. A defendant arguing that the court relied on an improper factor " 'must show that the court relied on the particular improper fact when imposing the sentence.' " *Id.* (quoting *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 47).

¶ 39    Defendant was convicted of aggravated criminal sexual assault, a Class X felony. 720 ILCS 5/11-1.30(d)(1) (West 2022). The sentence for such felonies ranges from 6 to 30 years' imprisonment. 730 ILCS 5/5-4.5-25 (West 2022)). Defendant's 12-year sentence falls within this statutory range, and we therefore presume it is proper (*Webster*, 2023 IL 128428, ¶ 21) unless defendant affirmatively establishes otherwise (*People v. Cruz*, 2019 IL App (1st) 170886, ¶ 54).

¶ 40    Defendant contends that his sentence was influenced by the trial court's supposition that the children heard defendant assaulting B.M. and that he was inebriated that night. He notes that B.M. testified that the children slept through the assault and that the court found her testimony credible and his incredible. He asserts that nothing at trial evinced that he had been intoxicated, including his PSI, which indicated that he consumed "only a few drinks on special occasions." He urges that the court's characterization of his conduct as "incredibly repugnant" and "despicable," combined with its imposition of a double-the-minimum sentence, demonstrates the court's reliance on its supposed beliefs.

¶ 41 Defendant has failed to establish that the trial court clearly or obviously erred in supposedly considering that the children heard the assault. First, the evidence at trial supported a finding that the children heard the assault. B.M. testified that the closet door was "partially open." Defendant testified that A.L. was awake when he arrived home, during his conversation with B.M., and when he said B.M. initiated intimacy. He also testified that the beds in the main room and in the closet were "right next to each other"—separated by a three-inch wall and three inches of space. B.M.'s diagram also shows the proximity of the two beds. Defendant said he could hear someone speaking from the opposite side of the five foot by seven foot apartment and could also hear neighbors through the walls. Although defendant highlights that the court found his testimony unreliable, "a trier of fact is free to accept or reject as much or as little as it pleases" of witness testimony. *People v. Walls*, 2022 IL App (1st) 200167, ¶ 29. It is within the trial court's purview to determine witness credibility, the weight given to testimony, and the reasonable inferences to be drawn from the evidence, and we will not disturb the trier of fact's findings. *Id.* Based on the evidence at trial, the court did not clearly or obviously err in concluding that the children heard "something" of the assault.

¶ 42 Second, to the extent that the record on appeal suggests that the trial court considered the children hearing the assault in issuing its sentence, defendant has failed to establish that the court clearly or obviously erred in doing so. Defendant's opening and reply briefs do not provide any legal authority for the proposition that a court cannot consider the harm suffered by children who heard their mother's sexual assault. Indeed, our case law has recognized that courts may properly consider the serious harm a defendant's conduct caused or threatened to others. See *People v. Teague*, 2013 IL App (1st) 110349, ¶¶ 37-39; see also *People v. Brown*, 2019 IL App (5th)

160329, ¶ 22. A rational trier of fact could find that a child who heard her mother's sexual assault suffered serious harm that could be considered in aggravation.

¶ 43    Regarding whether the trial court improperly considered that defendant was intoxicated the night of the assault, nothing in the record on appeal affirmatively establishes that the court gave any weight to such a consideration. The court commented that defendant "may have been drunk or under the influence of alcohol" but did not find that defendant was inebriated and did not rely on such a finding. Defendant has failed to show that the court relied on this factor. See *Williams*, 2019 IL App (1st) 173131, ¶¶ 24-26.

¶ 44    Defendant also argues that the court mistakenly believed that he committed multiple acts of sexual penetration, highlighting the court's comment that counts I and II constituted "separate acts."

¶ 45    The record on appeal, however, lacks affirmative evidence that the trial court gave any weight to a misunderstanding that defendant committed multiple acts of sexual penetration. Rather, the court commented that counts I and II constituted "separate acts" to explain its imposition of consecutive sentences it considered mandatory pursuant to statute. See 730 ILCS 5/5-8-4(d)(2) (West Supp. 2021). Nothing in the record suggests that the court considered multiple sexual penetrations when fashioning defendant's individual sentence for aggravated criminal sexual assault.

¶ 46    Absent any error, defendant's request for plain error review lacks merit (*Quezada*, 2024 IL 128805, ¶ 51), and his allegation of ineffective assistance of counsel also fails (*Spears*, 2024 IL App (1st) 181491, ¶ 212).

¶ 47    Next, defendant argues, and the State concedes, that his convictions for counts I and IV each violate the one-act, one-crime doctrine. Defendant admits that he did not preserve the one-act, one-crime issues for our review and requests that we examine his convictions for plain error. One-act, one-crime violations, like the ones alleged here, are reviewable for plain error under the second prong. *People v. Coats*, 2018 IL 121926, ¶ 10.

¶ 48    The one-act, one-crime doctrine "prohibits convictions for multiple offenses that are based on precisely the same physical act." *People v. Smith*, 2019 IL 123901, ¶ 13. An act is "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977). When two convictions are premised on the same act, the more serious offense should receive a sentence, and the less serious one should be vacated. See, *e.g.*, *People v. Segara*, 126 Ill. 2d 70, 77-78 (1988) (affirming vacatur of six of the defendant's eight sexual assault convictions where he committed only two distinct sexual assaults); *People v. Thomas*, 2025 IL App (1st) 232035, ¶ 78. The one-act, one-crime doctrine also dictates that a defendant cannot be convicted of both an offense and a lesser-included offense. *People v. Miller*, 238 Ill. 2d 161, 165 (2010).

¶ 49    When considering whether the one-act, one-crime doctrine has been violated, this court uses a two-step test. *People v. Allen*, 2024 IL App (1st) 221681, ¶ 89. First, we must ascertain whether a "defendant's conduct involved multiple acts or a single act." *Id.* Next, if the conduct consisted of multiple acts, "we must determine whether the one offense is a lesser included offense of the other" using the abstract elements test. *Id.* ¶¶ 89-90. This test compares the elements of two offenses. *Id.* ¶ 90. "If all of the elements of one offense are included within a second offense[,] and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *Miller*, 238 Ill. 2d at 166. We apply *de novo* review when

deciding whether a defendant has been sentenced for multiple offenses stemming from the same act. *Wade*, 2025 IL App (1st) 231683, ¶ 73.

¶ 50　　As to the criminal sexual assault conviction under count I, defendant urges that the State only charged one act—contact between defendant's penis and B.M.'s sex organ—in the indictment as a basis for counts I and II and only established as much at trial. The State only differentiated between counts I and II in that count I was premised on aggravated domestic battery and count II was premised on aggravated battery. Defendant asserts that one act of sexual penetration cannot support convictions for criminal sexual assault and aggravated criminal sexual assault.

¶ 51　　Here, the State used identical language in both counts, charging that defendant "committed an act of sexual penetration" by making contact between his penis and B.M.'s sex organ. At trial, the State only established one instance of defendant sexually penetrating B.M.'s vagina with his penis. Because the State only charged and established one act of sexual penetration, defendant's aggravated criminal sexual assault and criminal sexual assault convictions were based on the same act. See, *e.g.*, *Segara*, 126 Ill. 2d at 77-78. Therefore, his conviction for criminal sexual assault must be vacated as the less-serious offense.

¶ 52　　Regarding the aggravated battery conviction under count IV, defendant posits that the trial court construed his grabbing of B.M.'s face and neck as a single act, as evidenced by the court merging counts IV and V for aggravated battery. Defendant then highlights that the aggravated criminal sexual assault conviction for count II was predicated on the single aggravated battery conviction for count IV. Consequently, he argues, the greater offense of aggravated criminal sexual assault (count II) contains all the elements of the lesser-included offense of aggravated battery (count IV), so the conviction for aggravated battery cannot stand.

¶ 53    Defendant's argument that aggravated battery is a lesser-included offense of aggravated criminal sexual assault necessitates a comparison of the elements for these offenses. See, *e.g.*, *Miller*, 238 Ill. 2d at 175-76.

¶ 54    "A person commits aggravated battery" to a pregnant person if he "knowingly *** makes physical contact of an insulting or provoking nature" with a person he knows to be pregnant. 720 ILCS 5/12-3(a), 12-3.05(d)(2) (West 2022). "A person commits aggravated criminal sexual assault" if he "commits an act of sexual penetration" using force or threat of force while also committing a felony. 720 ILCS 5/11-1.20(a)(1), 11-1.30(a)(4) (West 2022). Because aggravated criminal sexual assault, as charged, contains the felony of aggravated battery, it contains all the elements of aggravated battery. See *People v. Reveles-Cordova*, 2020 IL 124797, ¶ 21. Furthermore, aggravated battery contains no elements not included in aggravated criminal sexual assault. Therefore, aggravated battery is a lesser-included offense of aggravated criminal sexual assault, as charged, and defendant's conviction for aggravated battery on count IV must be vacated.

¶ 55    In sum, defendant's conviction and 12-year sentence for aggravated criminal sexual assault is affirmed. Defendant's conviction and five-year sentence for criminal sexual assault, and his conviction and five-year sentence for aggravated battery, are vacated.

¶ 56    Affirmed in part and vacated in part.